CITY OF EDMONDS, a municipal corporation, Plaintiff–Appellee,

v.

WASHINGTON STATE BUILDING CODE COUNCIL, Defendant,

and

Oxford House, Inc., a Delaware corporation; Oxford House–Edmonds, an unincorporated association, and Herb Hamilton, Defendants–Appellants.

UNITED STATES of America, Plaintiff–Appellant,

v.

CITY OF EDMONDS, a municipal corporation, Defendant–Appellee.

Nos. 92–36640, 92–36735.

United States Court of Appeals, Ninth Circuit.

March 14, 1994.

Rebecca K. Troth (argued) James P. Turner, Acting Assistant Attorney General for Civil Rights, David K. Flynn and Irving Gornstein, United States Department of Justice, Washington, D.C., were on the brief for the United States.

Robert I. Heller, Douglas H. Fleming, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Washington, for the defendants-appellants.

W. Scott Snyder, Ogden, Murphy & Wallace, Seattle, Washington, for the plaintiff-appellee-defendant-appellee.

Before: WRIGHT, CANBY, Jr., and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Group homes of more than five unrelated recovering alcoholics and drug addicts are effectively excluded from single-family residential zones in Edmonds, Washington. We ask whether the Fair Housing Amendments Act of 1988 (FHAA) exempts Edmonds' zoning ordinance from the statute's prohibition against discrimination based on handicap. The district court held that an exemption in the FHAA for occupancy restrictions applied. It relied on a similar holding in *Elliott v. Athens,* 960 F.2d 975, 979–81 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992). We disagree with *Elliott,* and so must reverse and remand.

## BACKGROUND

Oxford House–Edmonds (Oxford House) is a leased residence for 10–12 recovering adult alcoholics and drug addicts.[1] The residents are handicapped persons under the FHAA. 42 U.S.C. § 3602(h). The home stands in a residential neighborhood away from commercial zones, liquor stores, and illicit drug activity to minimize the likelihood of a relapse by a resident.

It is an unincorporated association that operates under a charter issued by Oxford House, Inc., which sponsors houses around the country, including 17 in Washington State. It is self-supporting, democratically governed, and required to expel any resident who uses alcohol or drugs. The house must have 6 or more residents to ensure financial self-sufficiency, to provide a supportive atmosphere for successful recovery, and to comply with federal requirements for the receipt of state start-up loans. 42 U.S.C. § 300x–25.

Oxford House is in a neighborhood zoned single-family residential. Edmonds Commu-

nity Development Code (ECDC) § 16.20.000 *et seq.* The only permitted primary uses are single-family dwelling units. ECDC § 16.-20.010(A)(1). "[A] single family dwelling [unit] means a detached building used by one family, limited to one per lot." ECDC § 21.-90.080. "Family means an individual or two or more persons related by genetics, adoption, or marriage, or a group of five or fewer persons who are not related by genetics, adoption, or marriage...." ECDC § 21.30.-010.

Edmonds issued criminal citations to the owner of the Oxford House and one resident. Oxford House violated the zoning provision because it housed more than five unrelated persons. Edmonds agreed "to refrain from any enforcement action until the resolution of this litigation." Oxford House requested that Edmonds make a reasonable accommodation as required under the FHAA, 42 U.S.C. § 3604(f)(3)(B), by permitting it to continue operation in the single-family residential zone. The city declined to permit continued operation in the residential zone, but did pass an ordinance listing group homes as permitted uses in multi-family and general commercial zones. There are no allegations that Edmonds acted out of any animus against the occupants of Oxford House because of their handicap.

Edmonds filed a declaratory judgment action. It sought a ruling that the single-family residential zoning provision did not violate the FHAA. The United States filed an action alleging that Edmonds' failure to make a reasonable accommodation violated the FHAA. The two were consolidated. The district court granted summary judgment to Edmonds. It ruled that the challenged zoning provision was exempted from the requirements of the FHAA because it was a "restriction[ ] regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1). Oxford House and the United States appeal.[2]

## ANALYSIS

We examine whether 42 U.S.C. § 3607(b)(1) exempts Edmonds' single-family

1. Much of the background is drawn from a joint stipulation submitted by the parties with their cross-motions for summary judgment.

2. These parties are referred to as Oxford House.

zoning ordinance. Whether Edmonds complied with the substantive requirements of the FHAA is not at issue because the district court did not reach that question. The district court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo the grant of summary judgment. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992).

■ Courts generously construe the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq. Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 368, 34 L.Ed.2d 415 (1972). As a broad remedial statute, its exemptions must be read narrowly. *Elliott*, 960 F.2d at 978–79 (construing FHAA); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) (construing Fair Labor Standards Act).

We look to the text of the statute to evince Congressional intent. The plain language will control, "unless (1) the statutory language is unclear, (2) the plain meaning of the words is at variance with the policy of the statute as a whole, or (3) a clearly expressed legislative intent exists contrary to the language of the statute." *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 866 F.2d 278, 280 n. 4 (9th Cir.1989).

### A. *Plain Language of FHAA*

Congress passed the Fair Housing Act as Title VIII of the Civil Rights Act of 1968, Pub.L. 90–284, 82 Stat. 81. It initially prohibited discrimination on the basis of race, color, religion, or national origin. Congress extended protection to handicapped persons in the Fair Housing Amendments Act of 1988, Pub.L. 100–430, 102 Stat. 1619.

The FHAA makes it unlawful

[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.

42 U.S.C. § 3604(f)(2). It defines discrimination to include

a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f)(3)(B). Participation in a supervised drug rehabilitation program, coupled with non-use, meets the definition of handicapped. 42 U.S.C. § 3602(h); *United States v. Southern Management Corp.*, 955 F.2d 914, 922 (4th Cir.1992).

The FHAA exempts certain regulations:

Nothing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling.

42 U.S.C. § 3607(b)(1). Edmonds' use restriction permits "two or more persons related by genetics, adoption, or marriage, or a group of five or fewer persons who are not related" to live in a single-family dwelling. ECDC § 21.30.010. The question is whether section 3607(b)(1) exempts Edmonds' single-family residential zoning ordinance from the FHAA.

We cannot discern from the plain language of the statute whether Congress intended to exempt Edmonds' zoning ordinance. Edmonds argues that its single-family use restriction is a "restriction regarding the maximum number of occupants." 42 U.S.C. § 3607(b)(1). Yet the zoning provision does not regulate the maximum number of related occupants. Oxford House argues that the statute exempts only those restrictions that limit the number of all occupants, whether related or not. Although both interpretations could be inferred, neither follows directly from the plain language.[3]

---

**3.** Put differently, Edmonds reads the exemption broadly to include use restrictions, and Oxford House reads the exemption narrowly to cover only occupancy restrictions. The two differ. Occupancy restrictions are typically found in housing codes.

> Housing codes ... set minimum standards for the occupancy of residential units. Items covered in such codes may include minimum space per occupant.... The major purpose of housing codes is to prevent overcrowding and the blighting of residential dwellings.

1 P. Rohan, *Zoning and Land Use Controls* § 1.02[6][c] (1993). Use restrictions, however, are associated with zoning provisions.

## B. *Legislative History of Exemption*

■ When a statute is ambiguous, legislative history may provide guidance. *Toibb v. Radloff*, 501 U.S. 157, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Columbia Pictures*, 866 F.2d at 280 n. 4. "[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill." *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984). Congress issued one report on the FHAA. It says:

> These provisions are not intended to limit the applicability of any reasonable local, State, or Federal restrictions on the maximum number of occupants permitted to occupy a dwelling unit. A number of jurisdictions limit the number of occupants per unit based on a minimum number of square feet in the unit or the sleeping areas of the unit. Reasonable limitations by governments would be allowed to continue, as long as they were applied to all occupants, and did not operate to discriminate on the basis of race, color, religion, sex, national origin, handicap or familial status.

H.R.Rep. No. 711, 100th Cong.2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 2173, 2192.

■ Exempting Edmonds' zoning provision would contravene the Report's directive that exempted restrictions apply to all occupants. The House Report does, however, anticipate exempting Edmonds' occupancy restriction, which requires sleeping rooms to have a floor area of "not less than 70 square feet...." Uniform Housing Code (UHC) § 503(b), 1988 Edition.[4]

> Zoning is the process by which a municipality legally controls the use which may be made of property.... Zoning ordinances are adopted to divide the land into different districts, and to permit only certain uses within each zoning district.
>
> *Id.* at § 1.02[1].

4. Edmonds employs both occupancy restrictions and use restrictions. ECDC § 19.10.000 incorporates the UHC, 1988 Edition.

> **Floor Area.** Every dwelling unit shall have at least one room which shall have not less than 120 square feet of floor area. Other habitable rooms, except kitchens, shall have an area of

## C. *FHAA Policy*

Courts should avoid an "unreasonable [result] 'plainly at variance with the policy of the legislation as a whole.'" *United States v. American Trucking Ass'ns.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (quoting *Ozawa v. United States*, 260 U.S. 178, 194, 43 S.Ct. 65, 68, 67 L.Ed. 199 (1922)). "'We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act.'" *Columbia Pictures*, 866 F.2d at 280 n. 4 (quoting *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962)).

The House Report indicates that Congress intended the FHAA to apply to "local land use and health and safety laws, regulations, practices or decisions which discriminate against individuals with handicaps." 1988 U.S.C.C.A.N. at 2185. Congress intended to prohibit "terms or conditions ... which have the effect of excluding, for example, congregate living arrangements for persons with handicaps." *Id.* at 2184. These include the "enforcement of otherwise neutral rules and regulations on health, safety and land-use in a manner which discriminates against people with disabilities." *Id.* at 2185.[5]

To effectuate this intent courts have applied the FHAA "where the application of a neutral [zoning] rule barred group homes of handicapped people from operating in certain areas." *Smith & Lee Assocs., Inc. v. Taylor*, 13 F.3d 920, 930 (6th Cir.1993) (applied to single-family zone permitting nonprofit housekeeping units) (citing *Oxford House, Inc. v. Cherry Hill*, 799 F.Supp. 450 (D.N.J. 1992) (applied to single-family zone burdening unrelated persons)).

> not less than 70 square feet. Where more than two persons occupy a room used for sleeping purposes, the required floor area shall be increased at the rate of 50 square feet for each occupant in excess of two. UHC § 503(b). The zone classifications in the ECDC, however, impose control through use restrictions. *See* ECDC § 16.20.010 (permitted primary and secondary uses in single-family residential zone).

5. Edmonds' ordinance is facially neutral because it treats handicapped and non-handicapped persons similarly.

The FHAA imposes an affirmative duty to reasonably accommodate handicapped persons. 42 U.S.C. § 3604(f)(3)(B). Reasonable accommodation is borrowed from case law interpreting the Rehabilitation Act of 1973. 1988 U.S.C.C.A.N. at 2186 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). "[W]hile a [city] need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985).

Congress intended the FHAA to protect the right of handicapped persons to live in the residence of their choice in the community. 1988 U.S.C.C.A.N. at 2185. The FHAA was to "end the unnecessary exclusion of persons with handicaps from the American mainstream." *Id.* at 2179. *See United States v. Badgett*, 976 F.2d 1176, 1179 (8th Cir.1992) (question not whether any housing made available, but whether housing individual desired was denied on impermissible grounds); *Familystyle of St. Paul, Inc. v. St. Paul*, 923 F.2d 91, 94 (8th Cir.1991) (Congress did not intend the FHAA to segregate mentally ill from social mainstream).

Exempting Edmonds' ordinance as an occupancy restriction would undermine the purposes of the FHAA. Many cities in this country have adopted similar use restrictions. *See Elliott*, 960 F.2d at 980; *Moore v. East Cleveland*, 431 U.S. 494, 495–96, 97 S.Ct. 1932, 1933–34, 52 L.Ed.2d 531 (1977). Applying the exemption would insulate these single-family residential zones from the sweep of FHAA requirements. Courts must ask whether a city's zoning satisfies FHAA standards, or whether a city has to alter neutral zoning policies to reasonably accommodate and integrate handicapped persons. The answers will vary depending on the facts of a given case. But these questions must be posed, or the policies the FHAA seeks to enforce will be frustrated.

### D. *Elliott v. Athens*

We disagree with the Eleventh Circuit's opinion in *Elliott*. That court held that section 3607(b)(1) exempted a zoning ordinance that permitted no more than four unrelated persons to reside in a single-family dwelling. *Elliott*, 960 F.2d at 980–81. A group home for recovering alcoholics and drug addicts had challenged the ordinance. *Id.* at 976.

The *Elliott* court recognized the constitutionality of use restrictions that limited occupancy in single-family residences to two unrelated persons, but any number of related persons. *Id.* at 980; *see Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). The court reasoned that Congress could not have intended to apply the FHAA to *Belle Terre* use restrictions, which are constitutional and widely prevalent in the United States. *Elliott*, 960 F.2d at 980.[6]

But the question is not whether Edmonds' ordinance could withstand a constitutional challenge brought by unrelated persons as in *Belle Terre*. It is whether Congress intended to apply the substantive standards of the FHAA to the ordinance. The legislative history and purposes of the FHAA demonstrate that Congress intended city zoning policies to reasonably accommodate handicapped persons. This can require something more than the enactment of minimally constitutional and facially neutral zoning ordinances. Edmonds must satisfy the FHAA standards.

---

**6.** Conversely, it noted that a use restriction that limited occupancy to members of a single family, but excluded a grandmother living with a grandson, impermissibly intruded into family decisions and ran afoul of the Due Process Clause of the Fourteenth Amendment. *Moore*, 431 U.S. at 499, 97 S.Ct. at 1935. The Court has not, however, held an occupancy restriction that applies to all residents to be unconstitutional. In *Moore* the plurality opinion positively referenced such limits. It pointed out

that East Cleveland has another ordinance specifically addressed to the problem of over-

crowding. Section 1351.03 limits population density directly, tying the maximum permissible occupancy of a dwelling to the habitable floor area.

*Moore*, 431 U.S. at 500 n. 7, 97 S.Ct. at 1936 n. 7 (citation omitted). Emphasizing the apparent approval of such a regulation, Justice Stevens said, "[t]o prevent overcrowding, a community can certainly place a limit on the number of occupants in a household, either in absolute terms or in relation to the available floor space." *Id.* at 520 n. 16, 97 S.Ct. at 1946 n. 16 (Stevens, J., concurring).

Accordingly, we conclude that Edmonds' single-family use restriction is not exempted. Section 3607(b)(1) only exempts occupancy restrictions that apply to all occupants, whether related or not.

### E.  Conclusion

We voice no opinion as to whether Edmonds complied with the substantive standards of the FHAA.  Because it exempted the zoning ordinance, the district court did not review the merits.  Many factors must be weighed to determine whether reasonable accommodation under 42 U.S.C. § 3604(f)(3)(B) was achieved.  We reverse and remand to the district court for the necessary findings.[7]

**REVERSED AND REMANDED.**

---

7.  Attorneys' fees may not be awarded to Oxford House under 42 U.S.C. § 3613(c)(2).  It must await the outcome of further proceedings.