John Edward **ROBINSON**, Plaintiff,

v.

The **CITY OF FRIENDSWOOD**,
Defendant.

**Civ. A. No. H–93–3543.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 16, 1995.

---

Theodore G. Dimitry, Vinson & Elkins, Houston, TX, for plaintiff John Edward Robinson.

William Scott Helfand, Hirsch Glover Robinson & Sheiness, John Joseph Hightower, Olson & Olson, Houston, TX, for defendant City of Friendswood.

### MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT

HARMON, District Judge.

The above referenced action is a case of first impression, grounded in Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Fair Housing [Amendments] Act of 1988 ("FHA"),[1] 42 U.S.C. §§ 3601 et seq., and 42 U.S.C. § 1983. Physically disabled, Plaintiff John Edward Robinson seeks to enjoin Defendant the City of Friendswood ("the City") from enforcing a zoning ordinance that requires Plaintiff to remove a carport[2] because it violates a City ordinance establishing a 25-foot building set-back from the front property line for residential buildings. The City has refused to grant him a zoning variance. Pending before the Court in the above referenced action are the City's motion for summary judgment (instrument # 20), Plaintiff's motion for summary judgment (# 23), and Plaintiff's motion to stay proceeding (# 28) until the United States Supreme Court issues a ruling in the appeal of City of Edmonds v. Washington State Building Code Council, 18 F.3d 802 (9th Cir.), cert. granted, ― U.S. ―, 115 S.Ct. 417, 130 L.Ed.2d 332 (1994).

The parties have filed stipulations on which this Court relies. Among these is a stipulation that Plaintiff is a person with a handicap and disability under 42 U.S.C. § 3602(h) and 42 U.S.C. §§ 12131(2) and 12102(2), respectively.

The City moves for summary judgment on all Plaintiff's claims. First addressing the ADA cause of action, the City argues that the ADA deals primarily with discrimi-

1. Although Plaintiff's complaint cites the Fair Housing Act [of 1968], before it was amended in 1988 it dealt only with discriminatory housing practices against individuals on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 3604(a)–(e) (1982). As amended in 1988, 42 U.S.C. § 3604(f)(1)–(3) (West Supp.1989), the Act made it unlawful to discriminate in the sale or rental of housing because of a handicap.

In relevant part, the FHAA provides that it shall be unlawful—
(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
(A) that buyer or renter
(B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
(C) any person associated with that buyer or renter.
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
(A) that person, or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that person.
42 U.S.C. § 3604(f)(1) & (2). Section 3604(f)(3)(B) defines discrimination to encompass

a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.
This provision's affirmative duty, imposed on city zoning policies and practices, to reasonably accommodate handicapped persons is borrowed from case law construing the FHA's predecessor statute, the Rehabilitation Act of 1973. City of Edmonds v. Washington State Building Code Council, 18 F.3d 802, 806 (9th Cir.), cert. granted, ― U.S. ―, 115 S.Ct. 417, 130 L.Ed.2d 332 (1994).

2. Plaintiff added the carport onto his house before September 15, 1993 without obtaining a permit. The two-car carport extends Plaintiff's house to within approximately five feet of the front property line. Plaintiff claims that his disabilities, including an artificial hip, secondary limp, and hypertension, and surgery for colon cancer, leave him prone to slipping and falling, especially on wet ground, and that he constructed the carport to provide a dry, safe walk to his residence and reduce his risk of falling. The City notes that his house originally included a two-car attached garage, but that Robinson converted it into living space. On September 13, 1993 the City informed Plaintiff that his carport violated the ordinance and must be removed within ten days. After Plaintiff applied for through established procedures and was denied a variance by the Zoning Board of Adjustment in October 1993, Plaintiff sued.

nation in areas of employment and places of *public* accommodation and makes no reference to municipal zoning. Section 12132, which Plaintiff insists applies to city regulation, provides,

> [s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The City criticizes Plaintiff's broad reading that the "or" in the last phrase makes the ADA applicable to any activity of a public entity and cites several district court cases that have concluded that a city zoning ordinance does not fall within the definition of "public services, programs, or activities." *Moyer v. Lower Oxford Township,* 1993 WL 5489 *2 (E.D.Pa. Jan. 6, 1993) (ADA not applicable in zoning context) (plaintiff failed to show on a motion to reconsider that the district court's holding that the ADA does not cover a zoning regulation was erroneous); *Oxford House, Inc. v. City of Albany,* 155 F.R.D. 409, 410 (N.D.N.Y.1994) (denying motion for reconsideration of district court's ruling that zoning regulation prohibiting more than three unrelated persons from living together was not covered by the ADA); *Burnham v. City of Rohnert Park,* 1992 WL 672965 *5 (N.D.Cal. May 18, 1992) (zoning ordinance barring parking of mobile homes in driveways of homes in residential areas is *not within purview of ADA*). Furthermore, the City contends, even if the ADA does apply to the zoning ordinance, because the ordinance on its face and in its effect does not discriminate against the disabled, there is no violation of the ADA. The purpose of the ADA (or its similar predecessor, the Rehabil-

itation Act, 29 U.S.C. §§ 701–794)[3] "is to assure that handicapped individuals receive the same treatment as those without disabilities." *Chiari v. City of League City,* 920 F.2d 311, 315 (5th Cir.1991). The City contends that the purpose of an antidiscrimination act is not to provide those traditionally discriminated against with preferential treatment, but rather with treatment equal to that accorded to others. *Wimberly v. Labor and Industrial Relations Commission of Missouri,* 479 U.S. 511, 517, 107 S.Ct. 821, 825, 93 L.Ed.2d 909 (1987). Here the ordinance treats disabled and nondisabled equally. The stipulations filed in this suit indicate that Plaintiff lived in this home with his present disabilities for years without a carport, and he has not shown that he would be forced to move if he cannot keep his carport.[4] At issue here is convenience, not necessity.

■ Furthermore, although the ADA requires reasonable accommodation for the disabled, it does not require provision of the best possible accommodation. *Vande Zande,* 851 F.Supp. 353. Moreover the City complains that Plaintiff built the carport without seeking a permit from the City, thereby denying the City an opportunity to find an alternative, legal accommodation for Plaintiff's disability. The City argues that in permitting Plaintiff to circumvent the proper permit procedure to build a structure, as well as allowing the carport to remain, the City would be giving Plaintiff preferential treatment not authorized by the ADA.

The FHA makes it illegal "to discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap ... [or] to discriminate against any person in the terms, conditions, or privileges of sale or rental of a

---

**3.** Case law interpreting the Rehabilitation Act is considered persuasive authority for interpreting the ADA because of the similarity between the statutes. *Chandler v. City of Dallas,* 2 F.3d 1385, 1391 and n. 18 (5th Cir.1993); *Vande Zande v. State of Wisconsin Dept. of Administration,* 851 F.Supp. 353 (W.D.Wis.1994) (and cases cited therein), *aff'd,* 44 F.3d 538 (7th Cir.1995).

**4.** Specifically, the following stipulations are found in instrument # 22:

1. Robinson has continuously lived in his house at 505 Brandywyne in Friendswood, Texas since April 14, 1969.
2. During the time Robinson has lived in his house, he has not attempted to sell his home or locate and/or purchase a new home.
3. Robinson has suffered from the disabilities and/or handicaps he claims in this suit since December 17, 1988.
4. Robinson began construction of a carport on August 26, 1993.
5. Robinson completed construction of his carport on September 20, 1993....

dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(1) and (2). The City maintains that the FHA does not address zoning variances for one who already owns property nor regulate existing homeowners' use of their property. Rather it prohibits discrimination in the sale or rental of property to disabled individuals. *Devereux Foundation v. O'Donnell,* 1990 WL 132406 *5 (E.D.Pa.1990).

■ The FHA does not permit disabled individuals to circumvent the regulatory process for exceptions to zoning ordinances. *Oxford House,* 825 F.Supp. at 1262. Plaintiff's failure to follow the permit procedure is not countenanced by the statute.

The Fair Housing Act protects handicapped individuals from discrimination. It does not ... insulate such individuals from legitimate inquiries designed to enable local authorities to make informed decisions on zoning issues, such as whether, or on what terms, to grant conditional use permits. More particularly, by requiring "reasonable accommodations in rules, policies, practices or services" if necessary to afford handicapped persons "an equal opportunity to use and enjoy a dwelling," the Fair Housing Act contemplates that municipalities will engage in informed decision making respecting application of their zoning ordinances. Congress is presumed to have known that public hearings are procedural prerequisites for zoning variances or conditional uses; and if Congress had intended to exempt handicapped persons from participation in the usual procedural requirements of the zoning process, it could have done so expressly. Perhaps Congress elected not to follow that course because a fundamental tenet of the FHAA, and, for that matter, the Rehabilitation and Disabilities Acts, is to integrate handicapped individuals into society, not to further remove them from the normal and usual incidents of citizenship, such as participation in the public components of zoning decisions, to the extent that such participation is required of all citizens whether or not they are handicapped.

*Id.*

■ Even if the FHA were applicable here, the City emphasizes that it applies to all residents equally. Reasonable governmental limitations may continue as long as they treat all citizens equally and do not in effect discriminate against the handicapped. *Devereux* at *6. The City maintains that the ordinance is not discriminatory on its face nor in its application.

■ Finally the FHA's concept of "reasonable accommodation" requires a balancing of the interest of and benefit to the handicapped individual against the interest of and burden to municipality in making such accommodations based on the facts of each case. *Oxford House,* 825 F.Supp. at 1261.

■ Regarding Plaintiff's § 1983 cause of action, the City insists he has suffered no deprivation of a constitutional or federally protected right, as is required to state a claim under the statute. *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). Plaintiff has no constitutional right to the carport because of his handicap. Even if he did, a zoning ordinance is constitutional if it is reasonable and related to the public health, safety, morals, or general welfare. *Shelton v. City of College Station,* 780 F.2d 475, 480 (5th Cir. 1986). The purpose of the zoning ordinance at issue here, which is similar to those of other cities, is to provide residents of the area with an adequate amount of light and air, to avoid traffic congestion, and to reduce fire hazards. The City maintains that there is no showing of a violation of due process here: Plaintiff received a notice and a hearing before the Zoning Board of Adjustment on his request for a variance, which was made after he constructed his carport without a permit and violated the setback ordinance. Moreover to seek federal court review in a zoning ordinance dispute under § 1983, Plaintiff must, but here failed to, exhaust state remedies in state court. *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985). Finally the City argues that if Plaintiff has any federal remedy, ADA is the exclusive means and therefore Plaintiff has no remedy under § 1983. *Irby v. Sullivan,* 737 F.2d 1418, 1428 (5th Cir.1984).

With an affidavit from Plaintiff and a letter from his physician attached, Plaintiff's cross motion for summary judgment explains that wet pavement is an "insurmountable obstacle" for him with his unsteadiness and impaired ability to walk and he requires the protection of the carport to avoid further debilitating injury.

As for his claim under the FHA, Plaintiff cites numerous cases reflecting that courts apply the statute's reasonable accommodations requirement to zoning ordinances and land-use decisions by municipalities, a fact that is not contested.

■ A plaintiff can prove an FHAA violation by showing (1) intentional discrimination; (2) discriminatory impact; or (3) a municipality's refusal to make reasonable accommodations. *Oxford House–C v. City of St. Louis,* 843 F.Supp. 1556, 1557 (E.D.Mo. 1994); *Oxford House. Inc. v. City of Virginia Beach, Va.,* 825 F.Supp. 1251, 1258 (E.D.Va. 1993).

■ The legislative history of the FHA indicates that where a zoning or land-use ordinance restricts the ability of handicapped individuals from living in the community of their choice, that regulation is unlawful. H.R.Rep. No. 711, 100th Cong., 2d Sess. 24 (1988), U.S.Code Cong. & Admin.News 1988, p. 2173. "The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community." *Devereux,* 1990 WL 132406 *5. A local government using zoning powers in a discriminatory manner violates the FHA. *Id.* at 6, *citing Resident Advisory Board v. Rizzo,* 564 F.2d 126, 149–50 (3rd Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978) and *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1285 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). Section 3604(f)(1) applies not only to sellers or landlords, but to sophisticated practices such as enforcing zoning or land use laws that have the effect of denying housing to the disabled. *Oxford House–C v. City of St.*

*Louis,* 843 F.Supp. at 1575, *citing* H.R. Report, No. 711, 100th Cong., 2d Sess. 23, reprinted in 1988 U.S.Code Cong. & Admin.News 2173, 2185 ("The Committee intends that the prohibition against discrimination against those with handicaps to apply to zoning decisions and practices") and *United States v. City of Black Jack,* 508 F.2d 1179, 1183–84 (8th 1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). Nevertheless Congress intended that the FHA permit reasonable government limitations as long as they are applied to all groups and do not effectively discriminate on the basis of a handicap. *Devereux,* 1990 WL 132406 *5, *citing* H.R.Rep. No. 100–711, 100th Cong., 2d Sess. 31 (1988).

■ Although this Court concurs with the City that the FHAA addresses discrimination against the handicapped in obtaining housing, even if it applies to individuals already in residence in the community, Plaintiff has failed to show that the City violated its provisions. Plaintiff has not attempted to show intentional discrimination by direct evidence. To establish a *prima facie* case through indirect means, a plaintiff must prove that the challenged practice "actually or predictably" results in disparate impact discrimination. *Oxford House, Inc. v. Town of Babylon,* 819 F.Supp. 1179, 1182–83 (E.D.N.Y.1993). Plaintiff has failed to make such a showing. Nor do the stipulated facts here support Plaintiff's allegation that the City unreasonably refused to make accommodations necessary for Plaintiff to live in his house. The disputed zoning ordinance, requiring a twenty-five-foot setback from the front property line of all structures for residential use in the City, is neutral on its face and applies generally to all residences of the City. Nor was it applied to Plaintiff in a discriminatory manner. That Plaintiff had the same disabilities and lived in the same house for years before he constructed the carport indicates that ordinance did not prevent him from obtaining housing of his choice nor from living in the community of his choice. Rather Plaintiff chose to convert an existing, attached, two-car garage into quarters for other purposes, even though it would have met his asserted needs without violation

of the law. Moreover that deliberate action undermines his argument that his handicap necessitates a variance or some other accommodation by the City and demonstrates that his insistence on keeping the illegal carport is arbitrary and uncompromising. Accordingly the Court concludes that summary judgment under the FHAA should be granted to the City.

 Plaintiff has requested the Court to stay these proceedings until the United States Supreme Court issues a ruling in the *City of Edmonds* case. The *United States Law Week* characterizes the issue presented to the Court:

Does traditional zoning definition of "single family," established to limit use and occupancy of residences in single family residential zones, constitute "reasonable occupancy limitation" pursuant to exemption created by Fair Housing Act Amendments, 42 U.S.C. § 3607(b)(1), when neutral on its face and without any evidence of intent to discriminate against persons protected by Fair Housing Act and Fair Housing Act Amendments, 42 U.S.C. § 3601–3631?

63 USLW 16 d36 (November 1, 1994). The City objects that the issue in *City of Edmonds* is so different from that in the instant case that a ruling would have no bearing on the resolution of this case. The Court agrees with the City.

 Plaintiff notes there is limited authority on the nature and extent of the applicability of the ADA, a recently enacted statute, to zoning. This Court concurs with the City that Plaintiff has read the final phrase of § 12132 far too broadly and that the Act is directed toward areas where there is *public* access. Even if it did apply to the setback, the Court, as indicated above, finds no evidence of discrimination in the ordinance either on its face or in its application to Plaintiff.

 Plaintiff maintains that a § 1983 may be based on a violation of the ADA and the FHAA. Because the Court finds no violations of these statutes, it further concludes that Plaintiff has failed to state a claim under § 1983.

Accordingly, the Court

ORDERS that the City's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment and motion to stay are DENIED.