**W. H. WILLIAMS et al., Plaintiffs,**

v.

**WHEELING STEEL CORPORATION,**
**etc., Defendant.**

**No. 1061–W.**

United States District Court
N. D. West Virginia.
April 13, 1967.

- - - ◆ - - -

Gilbert S. Bachmann, Melvin W. Kahle, Wheeling, W. Va., James A. Ashton, Pittsburgh, Pa., for plaintiffs.

Thomas B. Miller, Schmidt, Laas, Schrader & Miller, Burr A. Horn, Jr., Gen. Counsel, Wheeling Steel Corp., Wheeling, W. Va., for defendant.

James P. Clowes, Wheeling, for United Steel Workers of America, as amicus curiae.

MAXWELL, Chief Judge.

This suit, purporting to be a class action, was brought by a number of former employees of the Wheeling Steel Corporation against their employer.[1] The defendant, Wheeling Steel Corporation, has filed a motion to dismiss the plaintiffs' action for failure to state a claim upon which relief could be granted. This motion was made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thus, it is within the narrow procedural framework of this motion that the Court now considers the claims of these plaintiffs.

The plaintiffs allege, and the record at this juncture does not contradict the allegation, that they were members in good standing of the union which represented them during the events which lead to this controversy. The union, the United Steelworkers of America (hereinafter Steelworkers), was originally a party defendant in this suit but was dismissed with prejudice by an order entered on October 22, 1962. The plaintiffs, at that time, made no objection to the dismissal of the Steelworkers.

The plaintiffs set forth the factual background of their alleged cause of action in paragraphs 9 and 10 of their amended complaint, filed with this Court on November 1, 1962.

"On or about March 5, 1956, defendant, Wheeling Steel Corporation, announced and represented to its employees that one of their plants, namely the Wheeling Factory located in the City of Wheeling, West Virginia, was to close. Simultaneously with the aforesaid action of the Wheeling Steel Corporation, said corporation did announce to all employees of the Wheeling Factory that they would be required to make a final and irrevocable choice of one of the following options:

(a) Interplant transfer option, or

(b) Pension option for those who may be eligible, or

(c) Severance pay option for those who may be eligible,

and each employee was required within five (5) days following the contact to make known his or her choice of option on a form to be signed by the employee.

"Plaintiffs allege and aver that the representations of the defendant, Wheeling Steel Corporation, that said plant would close, was false and fraudulent and/or a material misrepresentation of fact; that in fact, said plant did not close and was still operating as late as 1962 and continued in active operation from the 5th day of March 1956 until the early part of January 1961."

The amended complaint goes on to specify some five categories into which the plaintiffs, and those whom they claim to represent, allegedly fall. Without attempting to delineate with precision the

---

1. The plaintiffs, in their brief, argue that they can recover on either of two theories: " * * * the first a common law action of deceit and the second an action under the collective bargaining agreement itself."

The plaintiffs largely abandoned the first theory during oral argument, conceding that their case was, for all practical purposes, based on Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

bounds of plaintiffs' categories, each of the wrongs alleged flows from the three options which the plaintiffs were given on March 5, 1956.

In essence, the plaintiffs contend that they were denied their contractual rights to continued employment from the time that they were actually laid off until the time that they would have been laid off if the contractual provisions covering the "phasing out" of the Wheeling Factory had been followed.

There are two collective bargaining agreements between Wheeling Steel and the Steelworkers which cover the employment status of the plaintiffs. The first of these contracts is the "1954 Agreement" which covered all of the employees of Wheeling Steel. This agreement is of little importance here, except that it outlines the grievance adjustment procedure.[2]

The Court assumes, and has not been advised to the contrary, that the arbitration provisions of the 1954 Agreement are applicable to the Supplemental Agreement of 1956. However, if the arbitration provisions did not apply there would be no question that the plaintiffs here could maintain their suit. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

The second, and more important, contract which is applicable here is the "Agreement of April 24, 1956," which sets out in detail the procedure to be followed in the "phasing out" of the Wheeling Factory. Here, Wheeling Steel and the Steelworkers spelled out the options, and the ramifications thereof, which were to be afforded the employees of the Wheeling Factory in light of the anticipated closing of that facility. This agreement, in the section dealing with the Inter-Plant Transfer Option, provides that these employees shall continue to retain Wheeling Factory seniority for certain limited purposes. Section I(A) D (c)1 provides in part:

> "If such employee should be laid off from the plant to which transferred, he may use his Wheeling Factory Plant seniority or Unit seniority for the purpose of obtaining work at Wheeling Factory by displacing another employee of such Certified Collective Bargaining Unit junior to him in Wheeling Factory seniority."

This provision seems to indicate that transferred employees could have returned to the Wheeling Factory provided that certain special conditions were met, i. e., the retention of plant or unit seniority sufficient to displace an individual who was working at the Wheeling Factory.

The provisions of the 1956 Agreement dealing with those employees who elected the pension or severance pay options do not contain a similar clause.

At this point, the issue before the Court is not the merits of the plaintiffs' claims but, rather, the question of whether their amended complaint states a valid cause of action.

It is, of course, well-settled that where, as here, the contract covering the employment status of the company's employees contains an exclusive arbitration clause, the employees must at least *attempt* to exhaust the grievance and arbitration procedures established by the collective bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580. This is

---

**2.** Article IX of this agreement provides for the adjustment of grievances. Section 1 of this article contains the standard *quid pro quo* agreement between the company and the union in which the union yields the right to strike for the period of the contract and the company agrees to arbitrate the grievances which arise under the agreement. The procedure set out in Section 2 provides for five stages of negotiations. The first four stages provide for conferences between increasingly higher levels of company and union officials. The fifth and final stage of the grievance procedure calls for the submission of the grievance to " * * * an impartial umpire to be appointed by mutual agreement of the parties hereto." It further provides that the decision of this umpire will be final. It is not immediately clear from the agreement itself whether an individual employee may *sua sponte* prosecute his grievance to the fifth stage.

grounded on the idea that since the employee's claim arises from the collective agreement, he must follow the procedure which is set up for the adjustment of disputes with regard to his contractual rights.

The *Maddox* case left open the question of the employee's status after he had attempted to exhaust his contract remedies. This situation has been clarified by the United States Supreme Court in its recent decision of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, which was handed down on February 27, 1967. The factual situation in Vaca v. Sipes is somewhat different from the case at bar, but the Court enunciated guidelines applicable in a suit by an employee against his employer. One of the situations mentioned by the Court in its opinion was:

" * * * when * * * the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." (Emphasis by the Court).

The Court further observed that although the employer might be blameless in the situation in that he "may have done nothing to prevent exhaustion of the exclusive contractual remedies," the employer has nonetheless committed a *wrongful discharge* in breach of the agreement;

" * * * a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee."

In paragraph 16 of their amended complaint, the plaintiffs make the following allegation:

"Notwithstanding the efforts of large numbers of the plaintiffs to have the Union file and process a grievance for them, none was ever processed until after this suit was filed and then, unknown to any of the parties thereto, the defendant corporation and certain members of the officers of the Union and the Grievance Committee caused a grievance to be processed for approximately thirty-two (32) individuals without their knowledge and although the grievance was successfully prosecuted for part of the individuals (sic) claim, your plaintiffs knowing nothing about it, did not testify concerning it and they feel that by reason of the small amount recovered, it was nothing more than an attempt to defeat this lawsuit by said action * * *."

This allegation would appear to fall within the requirement set out in Vaca v. Sipes providing that an aggrieved employee, to maintain a cause of action in the face of an asserted defense grounded on failure to exhaust the exclusive contract grievance procedure, must allege that his attempt to exhaust was thwarted by "arbitrary, discriminatory or * * * bad faith" conduct on the part of the union.

The plaintiffs' burden in resisting a motion to dismiss for failure to state a cause of action is a relatively slight one. Professor Moore puts it well:

" * * * a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Pleadings are to be liberally construed. Mere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement." (Emphasis and footnotes omitted.) 2 Moore, Federal Practice, Section 12.08.

As Mr. Justice Black cogently observes in his Vaca v. Sipes dissent, the courthouse door has been opened only slightly in suits by employees against their employer and/or union.

The plaintiffs in the action now before the Court have a heavy burden to bear in completing the full circle of their litigation. A breach of the duty of fair

representation can not be established merely by proving that the grievances of these employees had merit. However, this Court feels that the plaintiffs here should have an opportunity to attempt to meet this burden.

It may be that this case is an appropriate one for summary judgment when the parties have completed the necessary discovery. One of the difficulties of this case is that there is presently no information before the Court with regard to the handling of those grievances which were processed. The *Maddox* case indicates that the mere fact that an employee's grievance was processed would not in itself be enough to bar the employee's suit.

"If the union * * * only perfunctorily presses the individual's claim differences may arise as to the forms of redress then available." 379 U.S. at 652, 85 S.Ct. at 616.

However, this is a question that can not be passed on until it is more precisely presented to the Court.

The Court will, therefore, overrule the motion of the defendant, Wheeling Steel Corporation, to dismiss for failure to state a cause of action.