Clio E. SLAGLEY, Plaintiff-Appellant,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, Order of Railway Conductors and Brakemen, and Order (Brotherhood) of Railway Trainmen, Defendants-Appellees.

No. 16682.

United States Court of Appeals Seventh Circuit.

June 20, 1968.

Rehearing Denied July 30, 1968.

548

Ronald T. Bosco and Donald J. Mc-Lachlan, Chicago, Ill., for plaintiff-appellant.

Robert Mitten, John W. Foster, Lawrence Lawless, Burke Williamson, Jack A. Williamson, Chicago, Ill., for appellee.

Harry Wilmarth, Cedar Rapids, Iowa for defendant-appellee Order of Railway Conductors and Brakemen.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge, and HASTINGS, Circuit Judge.

HASTINGS, Circuit Judge.

Appellant Clio Slagley, plaintiff below, appeals from an order entered November 14, 1967 granting appellees' motion to dismiss his complaint for lack of jurisdiction.

The substance of the allegations of the complaint follow. Appellant has been employed by appellee Illinois Central Railroad Company (I.C.) since 1928 and was a conductor on July 1, 1960. At all pertinent times he was a member in good standing of the appellee Order of Railway Conductors and Brakemen (O.R.C. & B.).

At all pertinent times the cooperative agreement to which all appellees were parties, contained this provision:

"(e) Conductors may not voluntarily relinquish their rights as such and take a position as trainman without forfeiting their rights as conductors, except that the two general chairmen, by mutual agreement, may sub-divide seniority districts and/or territories over which conductors hold seniority; provided that exceptions to the aforesaid may be made if mutually agreed upon. It is further provided that the two general chairmen may, when it is mutually agreeable, permit a conductor, when sick, disabled, or injured, to work in a junior class, under such terms and conditions as may be mutually agreed upon."

In 1960, appellant obtained and submitted to appellee Order (Brotherhood) of Railway Trainmen (B.R.T.) the recommendation of his physician that he be permitted to work in a position junior to that of conductor because of a physical disability. In accordance with the contract provision quoted above the two appellee unions agreed to permit appellant to work in a junior class for six months beginning May 23, 1960. I.C. approved and sanctioned this agreement. On November 18, 1960, appellant's physician recommended that he continue working in the junior position.

When appellant reported for work on November 24, 1960, the day after the six months period expired, he was assigned by I.C.'s trainmaster to work in a junior position. He worked that day in the position assigned. Immediately thereafter the O.R.C. & B. compelled I.C. to deprive him of his seniority rights as a conductor.

The complaint further alleges that appellees' actions violated the cooperative agreement and deprived appellant of valuable property rights without due process, in violation of the Federal and Indiana Constitutions. It alleges that their actions were arbitrary, capricious and discriminatory. It seeks recovery of compensatory damages of $25,000, punitive damages of $1,000,000 and an injunction prohibiting further interference with appellant's seniority rights and requiring I.C. to restore his seniority.

I.C. and O.R.C. & B. filed motions to dismiss for lack of subject matter jurisdiction on August 28, 1967 and September 7, 1967. respectively.[1] The district

---

1. B.R.T. filed a motion to dismiss on other grounds September 11, 1967.

court granted the motions on the alternative grounds that appellant's exclusive remedy is in the National Railroad Adjustment Board, that if the option of court action were open to him he waived it by submitting his dispute to the Adjustment Board,[2] and that he did not allege the requisite diversity of citizenship.

We first consider whether the Adjustment Board has exclusive jurisdiction of appellant's claims.

Section 3 First (i) of the Railway Labor Act, 45 U.S.C.A. § 153 First (i) provides:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

By this provision of the Act, Congress has provided an exclusive procedure for the settlement of so-called "minor disputes"—those involving the interpretation or application of agreements concerning rates of pay, rules or working conditions.[3] Pennsylvania R. Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L. Ed. 318 (1946). Concomitantly, by this provision Congress deprived the state and federal courts of jurisdiction of "minor disputes." *Ibid.*

Appellant's claims clearly involve a minor dispute, concerning the interpretation and application of the contract provision quoted above.

Appellant implicitly concedes the Adjustment Board's exclusive jurisdiction of minor disputes. He contends, however, that the Board's jurisdiction is exclusive only in the sense that minor disputes must be submitted to the Board

---

2. It appears by way of affidavit, although not in the complaint, that on October 31, 1962 appellant's claim was submitted by B.R.T. to the Adjustment Board. The claim has not been decided by the Board. The complaint in the instant case was filed August 1, 1967.

3. However, a discharged railroad employee who is aggrieved by his discharge may elect between pursuing the grievance procedures of the applicable collective bargaining agreement with right of review by the Adjustment Board (pursuant to § 3 First (i) of the Act) *or* accepting the finality of his discharge and bringing an action for damages in a state or federal court. Walker v. Southern R. Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), modified, 386 U.S. 988, 87 S.Ct. 1300, 18 L.Ed.2d 332 (1967); Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). In Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950) the Supreme Court limited this exception to common-law wrongful discharge cases in which the relief sought is damages rather than reinstatement. Even this exception may be short-lived. The Court's most recent reaffirmation of it apparently rested on the inadequacies of the Adjustment Board procedure, specifically the delay inherent in it and the unavailability to the employee of judicial review of Board decisions. Walker v. Southern R. Co., supra. The Court's language implied that if the recent amendments to the Railway Labor Act (P.L. 89–456 §§ 1, 2, 80 Stat. 208) make the Board's remedies more effective even this limited exception to the exclusiveness of Board jurisdiction over minor disputes may be abandoned.

*initially,* and that to come within the jurisdiction of state or federal courts the employee need only first *attempt* to exhaust his contractual and administrative remedies under § 3 First (i) of the Railway Labor Act. In support of this proposition he relies on language in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) and Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), both decided under the Labor-Management Relations Act, 29 U.S.C.A. §§ 141–187.

In *Maddox* the Court held that federal labor policy requires an aggrieved employee to *attempt* use of established contract grievance procedures before seeking other modes of redress, where those procedures are made exclusive by the applicable bargaining agreement. The Court thereby gave effect to Congress' declared preference for the use of contractual procedures to settle labor disputes. Labor-Management Relations Act § 203(d), 29 U.S.C.A. § 173(d).

However, in *Vaca* the Court indicated that the aggrieved employee need not exhaust his contract remedies before seeking judicial enforcement of his contract rights under § 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a), where "the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* * * * the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." 386 U.S. at 185, 87 S.Ct. at 914. As the Court subsequently stated in *Vaca,* the wrongful refusal must constitute a breach by the union of its duty of fair representation—arbitrary, discriminatory or bad faith conduct toward a member of the bargaining unit. 386 U.S. at 186, 190, 87 S.Ct. 903.

Both the National Labor Relations Act and the Railway Labor Act have the purpose of promoting the peaceful settlement of labor disputes. Both impose upon employers and employees the duty to meet and confer in good faith concerning disputes arising under the collective bargaining agreement. See National Labor Relations Act § 8(a)(5), (b) (3), (d), 29 U.S.C.A. § 158(a)(5), (b) (3), (d); Railway Labor Act § 2 First, Second, 45 U.S.C.A. § 152 First, Second. Both favor settlement of such disputes by procedures mutually agreed upon by employers and employees or their representatives. See National Labor Relations Act § 203(d), 29 U.S.C.A. § 173(d); Railway Labor Act § 3 First (i), 45 U.S.C.A. § 153 First (i). There are, however, important differences between the two statutes.

The statutes provide different procedures for the settlement of labor disputes. Under the National Labor Relations Act the employer and the bargaining representative may decide whether the contract grievance procedure shall be exclusive or nonexclusive and whether the procedure shall culminate in binding arbitration. See Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Haynes v. United States Pipe & Foundry Co., 5 Cir., 362 F.2d 414 (1966); Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 292 F.2d 112, cert. denied 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Under the Railway Labor Act arbitration of unsettled disputes is mandatory and a federal agency, the Adjustment Board, is created as arbiter. § 3 First (i), 45 U.S.C.A. § 153 First (i).

The statutes provide different roles for the courts in settling labor disputes. The National Labor Relations Act confers jurisdiction on federal district courts to entertain suits for the enforcement of collective bargaining agreements. § 301(a), 29 U.S.C.A. § 185(a). The courts' jurisdiction is limited only by the requirement that the plaintiff-employee has attempted to exhaust contract grievance procedures, if they are exclusive. The Railway Labor Act confers no original jurisdiction on the courts to entertain suits to enforce bargaining agreements. It grants the fed-

eral district courts limited review jurisdiction over decisions of the Adjustment Board and the "special adjustment boards." § 3 First (p), (q), Second, 45 U.S.C.A. § 153 First (p), (q), Second.

■ Finally, the statutes are distinguishable on the scope of power afforded the union to control the individual employee's grievance. The National Labor Relations Act leaves the employer and the union free to devise their grievance procedures. As the Supreme Court noted in *Vaca*, "because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant." 386 U.S. at 185, 87 S.Ct. at 914. In contrast, the Railway Labor Act reserves to the aggrieved employee the right to participate at all stages of the adjustment process. Elgin J. & E. R. Co. v. Burley, 325 U.S. 711, 740, n. 39, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), aff'd. on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Employees interested in minor disputes have the statutory right to designate their representatives for the "on the property" procedures and before the Adjustment Board. §§ 2 Second, 3 First (j), 45 U.S.C.A. §§ 152 Second, 153 First (j); McElroy v. Terminal Railroad Ass'n, 7 Cir., 392 F. 2d 966 (1968). Section 3 First (i) and (j) gives the individual employee the right to submit grievances to the Adjustment Board, the right to be heard and the right to notice. These rights are statutory and cannot be nullified by agreement between the carrier and the union. Elgin, J. & E. R. Co. v. Burley, supra, at 740, n. 39, 65 S.Ct. 1282; McElroy v. Terminal Railroad Ass'n, supra.

In view of these differences between the two statutes, we doubt there is either authority or justification for opening the courts to suits involving minor disputes under the Railway Labor Act. Congress has established an exclusive administrative procedure for the adjustment of such disputes and has given the courts a limited role in enforcing the provisions of the Act. Unlike the situation existing under the National Labor Relations Act, the railway unions cannot prevent aggrieved employees from pursuing their contractual and administrative remedies under the Railway Labor Act and the applicable collective bargaining agreement.

It appears that the 1966 amendment to § 3 Second of the Act may have enhanced the railway unions' control of the administrative procedures and correspondingly reduced the employees' right to control the processing of their grievances. Under the amended subsection, either the carrier or the union involved in a minor dispute can compel the convening of a "special board of adjustment" to decide specific disputes that have not been submitted to the Adjustment Board or that have been pending before the Board for more than twelve months. Special boards are composed of one designee of the carrier, one designee of the union and, if deadlock develops, a "neutral" member. The awards of special boards are final and binding, subject to the same limited judicial review provided for awards of the Adjustment Board.

The amendment permits the carrier or union involved in a minor dispute to remove that dispute from the jurisdiction of the Adjustment Board (unless it has been submitted to the Board and has been pending for twelve months or less) and submit it for decision to a special board. The railway unions are, therefore, able to control the employees' access to the Adjustment Board in most cases, and an employee whose union refuses to discharge its duty of fair representation is remediless, unless he finds redress in the courts.

■■ However, we need not decide whether the differences between the statutes render the *Maddox-Vaca* principle inapplicable to minor disputes under the Railway Labor Act. To come within the *Maddox-Vaca* exception to the general exhaustion requirement an employee suing to enforce a collective bargaining agreement must allege that he has at-

tempted to utilize the available contract grievance procedure and that his attempt has been thwarted by union conduct constituting a breach of the duty of fair representation. Desrosiers v. American Cyanamid Co., 2 Cir., 377 F. 2d 864 (1967); Williams v. Wheeling Steel Corporation, D.C.N.D.W.V., 266 F. Supp. 651 (1967). Appellant's complaint is plainly insufficient. It contains no allegation that he attempted to use the contract grievance procedures or file his claim with the Adjustment Board.

■ Appellant also seeks to sustain jurisdiction on the ground that his complaint charges the O.R.C. & B. with a breach of its duty of fair representation. Both the Railway Labor Act and the National Labor Relations Act impose upon exclusive bargaining agents the duty to serve the interests of all members of the bargaining unit without discrimination, arbitrariness or bad faith. Vaca v. Sipes, supra at 177, 87 S.Ct. 903; Humphrey v. Moore, 375 U.S. 335, 343, 84 S. Ct. 363, 11 L.Ed.2d 370 (1964).

■ It is well-established that the courts, not the Adjustment Board, have jurisdiction of actions by railroad employees to enforce the duty of fair representation against their unions. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U. S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The jurisdiction of the Adjustment Board is limited to "disputes between an employee or group of employees and a carrier or carriers." § 3 First (i).[4]

■ The pertinent allegations of the complaint are that the O.R.C. & B. compelled I.C. to deprive appellant of his seniority, that this action was "wrongful, unlawful, and unconstitutional," "arbitrary and capricious," and "constituted wrongful and unlawful discrimination toward plaintiff," and that the action breached the collective bargaining agreement and violated the Federal and Indiana Constitutions. We find these allegations insufficient to state a claim for breach of the duty of fair representation. They are mere conclusions of law, plainly insufficient under the Federal Rules of Civil Procedure. Rule 8(a), F. R.Civ.P., 28 U.S.C.A.; cf. Car-Two, Inc. v. City of Dayton, 6 Cir., 357 F.2d 921 (1966); Britton v. Atlantic Coast Line R. Co., 5 Cir., 303 F.2d 274 (1962); Marranzano v. Rigg's Nat. Bank, 87 U.S. App.D.C. 195, 184 F.2d 349 (1950).

■ The essence of the complaint is a claim for breach of contract by I.C. Resolution of the claim requires an interpretation of the contract. The dispute is therefore within the exclusive jurisdiction of the Adjustment Board. Cf. Thompson v. New York Central R. Co., 2 Cir., 361 F.2d 137 (1966); Haley v. Childers, 8 Cir., 314 F.2d 610 (1963); Ferro v. Railway Express Agency, Inc., 2 Cir., 296 F.2d 847 (1961).

Since we affirm the order of the district court on the ground that the Adjustment Board has exclusive jurisdiction, we need not consider the alternative grounds supporting the order.

Affirmed.

4. It is unclear whether, if it had jurisdiction of the claim against the O.R.C. & B, the district court had pendant jurisdiction of the claim against I. C. Compare Thompson v. New York Central R. Co., 2 Cir., 361 F.2d 137, 146 (1966) (opinion of Lumbard, C. J., concurring in part, dissenting in part) and Cunningham v. Erie R. Co., 2 Cir., 266 F.2d 411 (1959) with Haley v. Childers, 8 Cir., 314 F.2d 610 (1963) and Ferro v. Railway Express Agency, Inc., 2 Cir., 296 F.2d 847 (1961).