BUCKHANNON BOARD AND CARE HOME, INC., The West Virginia Residential Board and Care Home Association, Daisy Layman, by her next friend, Faye Byers, Dorsey Pierce, by her next friend, Lockie J. Marple, and on behalf of all others similarly situated, Plaintiffs,

v.

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Gretchen O. Lewis, Secretary, Office of Health Facility Licensure and Certification, Nancy Tyler, Director, Sandra L. Daubman, Program Manager, West Virginia Office of the State Fire Marshal, Walter Smittle, Fire Marshal, West Virginia State Board of Examiners for Registered Professional Nurses, Laura S. Rhodes, Executive Director, Gaston Caperton, in his official capacity as Governor of the State of West Virginia and State of West Virginia, Defendants.

No. Civ.A.2:96CV106.

United States District Court, N.D. West Virginia.

Feb. 19, 1998.

Webster J. Arceneaux, III, Chad B. McIntosh, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV, for Buckhannon Board and Care Home, Inc., West Virginia Residential Bd. and Care Home Ass'n, Daisy Layman, Dorsey Pierce.

Richard M. Yurko, Jr., Steptoe & Johnson, Clarksburg, WV, Chad M. Cardinal, Asst. Atty. Gen., Charleston, WV, Darrell V. McGraw, Jr., Atty. Gen., State of W.Va., Charleston, WV, Charlene A. Vaughan, Charleston, WV, for West Virginia Dept. of Health and Human Resources.

Richard M. Yurko, Jr., Steptoe & Johnson, Clarksburg, WV, Chad M. Cardinal, Asst. Atty. Gen., Charleston, WV, Charlene A. Vaughan, Charleston, WV, for Gretchen O. Lewis, Dorsey Pierce, Office of Health Facility Licensure and Certification, Nancy Tyler, Sandra L. Daubman, West Virginia Office of the State Fire Marshal, Walter Smittle, John Beaty, II, Joseph J. Bostar, III, Randy Breeden, James W. Fife, Francis A. Guffey, II, Daniel Hess, Gregory Alan Lay, David L. Tolliver, Stephen C. McBee, Bill L. Spencer, Victor Stallard, Jr., J.D. Waggoner, Kenneth Morgan.

Robert L. Burns, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Katherine A. Schultz, Stephanie M. Sisson, Atty. General's Office, Charleston, WV, Alice R. Faucett–Carter, Charleston, WV, for West Virginia State Bd. of Examiners for Registered Professional Nurses, Laura S. Rhodes, Gaston Caperton, State of W.Va.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, GRETCHEN O. LEWIS, OFFICE OF HEALTH FACILITY LICENSURE AND CERTIFICATION, NANCY TYLER, SANDRA L. DAUBMAN AND GASTON CAPERTON'S MOTION TO DISMISS, DENYING DEFENDANTS WEST VIRGINIA STATE BOARD OF EXAMINERS FOR REGISTERED PROFESSIONAL NURSES AND LAURA S. RHODES' MOTION FOR SUMMARY JUDGMENT IN PART AND MOTION TO DISMISS IN PART AND DENYING DEFENDANTS WEST VIRGINIA OFFICE OF THE STATE FIRE MARSHAL AND WALTER SMITTLE'S RENEWED MOTION FOR SUMMARY JUDGMENT IN PART AND MOTION TO DISMISS*

STAMP, Chief Judge.

### I. *Procedural History*

On October 28, 1996, plaintiffs filed this civil action in this Court, alleging violations of the Americans with Disabilities Act ("ADA") and the Fair Housing Amendments

Act ("FHAA"). Plaintiffs sought declaratory and injunctive relief in addition to money damages. On November 18, 1996, defendants West Virginia Department of Health and Human Resources ("HHR"), Gretchen O. Lewis ("Lewis"), Office of Health Facility Licensure and Certification ("OHFLAC"), Nancy Tyler ("Tyler"), Sandra L. Daubman ("Daubman"), and Gaston Caperton ("Caperton") filed a motion to dismiss. On November 22, 1996, defendants West Virginia Office of the State Fire Marshal ("Fire Marshal") and Walter Smittle ("Smittle") joined in that motion. On December 6, 1996, plaintiffs, Buckhannon Board and Care Home, Inc. ("Buckhannon"), the West Virginia Board and Care Home Association ("Association"), Daisy Layman by her next friend Faye Byers, and Dorsey Pierce by her next friend Lockie J. Marple, responded to that motion. On December 16, 1997, defendants the West Virginia State Board of Examiners for Registered Nurses ("Board") and Laura S. Rhodes ("Rhodes") filed a reply to plaintiffs' response. On December 30, 1996, defendants HHR, Lewis, OHFLAC, Tyler, Daubman, and Caperton filed a reply in support of their motion to dismiss.

On November 20, 1996, the Board and Rhodes filed a motion for summary judgment in part and a motion to dismiss in part. On December 30, 1996, plaintiffs filed a motion to amend the complaint. On January 13, 1997, defendants HHR, Caperton, the Board and Rhodes responded to that motion. On that same date, the Fire Marshal and Smittle filed a "Renewed Motion for Summary Judgment In Part and a Motion to Dismiss in Part and Objections to Plaintiff's [sic] Amended Complaint." On January 23, 1997, plaintiffs filed a reply in support of their motion to amend the complaint. On February 2, 1997, this Court granted plaintiffs' motion to amend the complaint and plaintiffs filed the amended complaint.

For the reasons set forth below, this Court finds: (1) defendants' motion to dismiss should be granted in part and denied in part, (2) the motion for summary judgment in part and to dismiss in part filed by the Board and Rhodes should be denied as moot, (3) the motion filed by the Fire Marshal and Smittle for partial summary judgment and their motion for partial dismissal should be denied.

## II. *Facts*

A complete recitation of the facts is not necessary for the resolution of the pending motions. However, the following facts are relevant to the issues raised by the parties. West Virginia Code § 16–5C–1, *et seq.* and 64 CSR § 65–1, *et seq.* govern residential board and care homes. Buckhannon operates as a residential board and care home ("RBCH"). The law and regulations require that all RBCH residents possess the ability to remove themselves, physically, from "situations involving imminent danger." 87 CSR § 1–14.7. This ability is called "self-preservation." *Id.*

On January 4, 1996, Buckhannon applied to OHFLAC for a renewal of their licensure as a RBCH with respect to three homes it operated. On January 30, 1996, OHFLAC conducted an inspection of Buckhannon's facilities and concluded that each home housed residents who were incapable of "self-preservation." As a result, OHFLAC issued statements of deficiency to Buckhannon. On September 3, 1996, OHFLAC conducted a second inspection of the Buckhannon homes and again cited Buckhannon for non-compliance with the fire safety code's requirement that residents of RBCH's be capable of "self-preservation." The State Fire Marshal also inspected the homes and issued a written report in which it reached the same conclusion. On October 18, 1996, OHFLAC ordered Buckhannon to cease operating as a RBCH and to relocate all its residents within 30 days. Subsequently, plaintiffs filed this civil action, alleging that the West Virginia law and the defendants' actions taken pursuant to that law violated the FHAA and the ADA.

## III. *Motion to Dismiss By HHR, Lewis, OHFLAC, Tyler, Daubman and Caperton*—Granted in part, Denied in part

In assessing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court must accept the factual allegations contained in the complaint as true. *Advanced Health–Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir.1990). Dismissal is appropriate pur-

suant to Rule 12(b)(6) only if " 'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.' " *Id.* at 143–144 (*quoting Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* 2d § 1356, at 294 (1990) (citations omitted). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Fed.R.Civ.P. 56 which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Fed.R.Civ.P. 8(a). As many courts have stated, the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Id.* § 1357, at 321. As this district court noted in *Williams v. Wheeling Steel Corp.*, 266 F.Supp. 651, 654 (N.D.W.Va.1967), "[t]he plaintiff's burden in resisting a motion to dismiss for failure to state a cause of action is a relatively slight one."

### A. Fair Housing Amendments Act Claim

■ Under the FHAA, a plaintiff may establish a claim in two ways. First, a plaintiff may allege facial discrimination, i.e. discriminatory intent/disparate treatment. This claim involves alleging that the challenged statute, regulation, or practice subjects, on its face, an FHAA protected group to "explicitly differential" treatment. *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir.1995). Once a plaintiff has shown such disparate treatment, a prima facie case under the FHAA has been established and the burden shifts to the defendant to justify the discriminatory law, regulation or practice. *Larkin v. Michigan Dept. of Social Servs.*, 89 F.3d 285 (6th Cir.1996). Second, a plaintiff may allege that an otherwise neutral statute, regulation, or practice has a discriminatory impact upon an FHAA protected group and that the defendant has failed to make a necessary, "reasonable accommodation" to afford the disabled an "equal opportunity to use and enjoy a dwelling." 42 U.S.C § 3604(f)(3)(B); *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 602–03 (4th Cir.1997); *see also Oxford House–C v. St. Louis*, 77 F.3d 249 (8th Cir.1996); *Larkin, supra.*

■ This Court has carefully reviewed the plaintiffs' complaint and finds that it establishes a prima facie case under the FHAA for facial discrimination. The relevant West Virginia Code sections and the regulations promulgated thereunder, W.Va.Code § 16–5C–1, *et seq.* and 64 CSR § 65–1, *et seq.*, apply only to persons residing in convalescent group homes.[1] The purpose behind these laws is stated in W.Va.Code § 16–5C–1. That provision explains that it is the state's purpose to "encourage and promote ... the effective care and treatment of persons who are convalescing or whose physical or mental condition requires them to receive a degree of nursing or related health care greater than that necessary for well individuals, but not so acute as to require hospitalization." This purpose shows that Chapter 16 is not generally applicable; thus, it is not facially neutral. "[S]tatutes that single out for regulation group homes for the handicapped are facially discriminatory." *Larkin*, 89 F.3d at 290. Moreover, "a plaintiff need not prove the malice or discriminatory animus of a defendant to make out a case of intentional discrimination where the defendant expressly treats someone protected by the FHAA in a different manner than others." *Bangerter*, 46 F.3d at 1501. It is also clear that Chapter 16 applies to an FHAA protected group. Under the FHAA, a person is "handicapped" if he or she has "a physical or mental impairment which substantially limits one or more

---

1. All citations to the West Virginia Code and regulations promulgated thereunder refer to the laws in effect prior to 1997.

of [his or her] major life activities." 42 U.S.C. § 3602(h).

As noted above, the defendants have moved this Court pursuant to Rule 12(b)(6) to dismiss plaintiffs' claim under the FHAA. Defendants argue that plaintiffs have failed to state an FHAA claim because the statutes and regulations at issue are rationally related to a legitimate government interest. Specifically, defendants argue that the "self-preservation" requirement ensures the safety of other RBCH residents, staff, and firefighters and that such protection is a legitimate government interest. Further, defendants contend that these laws and regulations are a valid exercise of the State of West Virginia's police powers under the Tenth Amendment of the United States Constitution and this Court should dismiss plaintiffs' claim for that reason.

Applying the standards for granting a motion to dismiss as outlined above, this Court finds that defendants' motion as to the FHAA claim should be denied. Defendants' arguments are inapposite to a motion to dismiss under the FHAA because they concern justifications for the discriminatory laws and regulations. *See Bangerter,* 46 F.3d at 1502. Such justifications cannot be found within the four corners of plaintiffs' complaint; therefore, they cannot be considered on a motion to dismiss. Accordingly, this Court concludes that the plaintiffs' pleadings are sufficient to withstand defendants' motion to dismiss the FHAA claim of discriminatory intent. Consequently, defendants motion to dismiss plaintiffs' claim for intentional discrimination under the FHAA should be denied.

■ Plaintiffs also allege a claim under the FHAA based upon the state's alleged failure to provide a "reasonable accommodation" to the laws and regulations which would allow persons unable to self-preserve to nevertheless live in an RBCH. Plaintiffs urge that a written waiver signed by the residents who cannot respond to an alarm and exit without assistance is a reasonable accommodation. Plaintiffs allege that such waivers were allowed in the past and should continue to be accepted so that those not capable of self-preservation could live in an RBCH if

they so choose. Defendants argue that such disregard for the fire regulations is not a reasonable accommodation and contravenes the basic purpose of the regulatory scheme that governs convalescent care. Furthermore, according to defendants, such waivers pose a direct threat to the health and safety of other residents, staff, and firefighters. Finally, defendants argue that plaintiffs cannot maintain both a claim for intentional discrimination and a claim for discriminatory impact, citing *Bangerter,* 46 F.3d 1491.

In *Bangerter,* the plaintiff challenged a regulation that applied only to group homes for the handicapped. Plaintiff argued that the regulation was facially discriminatory and that the state had failed to make a reasonable accommodation for the regulation's discriminatory impact. The court held that the plaintiff had made a prima facie case for intentional discrimination under the FHAA and denied the defendant's motion to dismiss that claim. At the same time, the court dismissed plaintiff's discriminatory impact claim, finding that maintaining both claims under the FHAA was "inappropriate" since plaintiff was not challenging an ordinance that was generally applicable. 46 F.3d at 1502.

This Court agrees with the reasoning of the *Bangerter* court. It is inconsistent and illogical to find on the one hand that a law or regulation is facially discriminatory because it applies only to the handicapped and then find that it is generally applicable but has a discriminatory impact. As explained above, the West Virginia laws and regulations at issue in this matter apply only to a FHAA protected group. They are facially discriminatory. Plaintiffs cannot simultaneously maintain a claim for intentional discrimination and discriminatory impact plus failure to make a reasonable accommodation. Accordingly, defendants' motion to dismiss plaintiffs' discriminatory impact plus failure to make a reasonable accommodation claim should be granted.

### B. *Americans with Disabilities Act Claim*

■ The Americans With Disabilities Act states: "no qualified individual with a disabil-

ity shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is one who has a disability, a mental or physical impairment that substantially limits one or more major life activities, 28 C.F.R. § 35.104, and who

> with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

The ADA does not define "services," "programs," or "activities." "Public entity" is defined, in relevant part, to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.

A public entity discriminates against an ADA protected individual if it "administer[s] a licensing or certification program in a manner" that subjects him or her to differential treatment. Also, a public entity may not "establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6). Moreover, a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

In support of their motion to dismiss, defendants argue that plaintiffs are not "qualified individuals with a disability" because there is no service, program or activity being offered for which plaintiffs can qualify. (Mot. to Dis. at 14). Further, defendants argue that residence at a RBCH does not constitute such a service, program, or activity

by virtue of the state's application of the fire safety code to the homes. (*Id.* at 14–15). Additionally, defendants contend that while public entities must make reasonable accommodations to ensure equality of opportunity, the ADA must not be interpreted so as to undermine, or require a "fundamental alteration" in, the licensure and fire safety regulation scheme. (*Id.* at 18–20). According to defendants, plaintiffs' resolution, waivers of liability signed by residents who cannot self-preserve, is not a reasonable accommodation because the waivers would undermine the fire regulation scheme.

Plaintiffs argue in response that the licensing requirements for RBCH's do fall within the scope of the ADA and that a waiver signed by RBCH residents who are not capable of self-preservation constitutes a "reasonable accommodation" that would bring the State and its agencies into compliance with the ADA. Plaintiffs note that such a waiver system has been used previously and that it applies only to one requirement of the fire safety scheme. This prior use of waivers and their negligible effect on the body of regulations governing fire safety show, according to plaintiffs, that waivers do not constitute a fundamental alteration in the licensure and fire safety codes.

After careful review of the parties' motions and memoranda and the relevant case law, this Court finds that plaintiffs have stated a claim under the ADA. As noted above, a Rule 12(b)(6) motion tests only the sufficiency of a complaint. Unlike a summary judgment motion, a motion to dismiss limits the court's review to the pleadings; the court is not resolving the merits of the case. Applying this standard, this Court finds that defendants' motion to dismiss the ADA claim should be denied. First, no party contests that defendants qualify as public entities. Second, West Virginia Code Sections 16–5C–2(f), 16–5H–2(f) and the regulations thereunder, 64 CSR §§ 65–3, 3.14 and 87 CSR §§ 1–14, 14.7 apply only to RBCH's and impose requirements not imposed on other facilities that house disabled persons. In this way, they subject the residents and the homes to differential treatment. Finally, for the following reasons, this Court finds that the law

and the regulations qualify as an "activity" within the scope of the ADA.

■ Although it appears that no court has addressed whether fire-safety codes are governed by the ADA, some courts have reviewed other types of permitting and licensing schemes. One court has held that the ADA prohibits local governments from administering zoning permit procedures and licensing schemes in a discriminatory manner. *Pack v. Clayton County*, 1993 WL 837007 (N.D.Ga.1993) (citing 28 C.F.R. § 35.130(b)(6)). The Second Circuit has held that "activity" includes refusing a building permit to an organization because its clientele were formerly drug-dependant. *Innovative Health Sys., Inc. v. White Plains*, 117 F.3d 37, 44–45 (2nd Cir.1997). This Court finds the rationale of the *Innovative* decision persuasive and applicable to this civil action.

Innovative Health Systems, Inc. ("IHS") was an outpatient drug and alcohol-rehabilitation treatment center which sought permission from the city of White Plains, New York to relocate its facility to downtown White Plains. Because the new facility would be much larger, IHS's director, Dr. Ross Fishman, planned to expand the services to include treatment for children of chemically-dependent parents. 117 F.3d at 40. Initially, the Deputy Commissioner of Building for the city told IHS that its proposed use of the downtown building was permissible under the city's zoning laws. *Id.* at 40–41. Dr. Fishman signed a lease for the space and began paying rent. Subsequently, IHS applied for a building permit to renovate the former retail space into office space. *Id.* at 41. The application generated "tremendous opposition from the surrounding community," who voiced fears of "jeopardized safety and falling property values" and referred to IHS's clientele as "undesirable elements." *Id.* at 41, 42, n. 3. Nevertheless, the Commissioner decided to grant the permit but his decision was subject to the approval of the Zoning Board. The Board reversed his decision and revoked the permit. *Id.* at 42. As a result, IHS and five of its clients sued the city and others, alleging that the revocation constituted discrimination and differential treatment based solely on a disability which violated the ADA and the Rehabilitation Act. *Id.*

The city moved to dismiss, arguing, in part, that zoning decisions do not fall within the scope of the ADA. The Second Circuit rejected that argument, finding unpersuasive the rulings of several district courts which held that the ADA did not apply to zoning decisions.[2] In so finding, the court noted that although the ADA did not define "service, program, or activity," the Rehabilitation Act, which contains a similar prohibition of discrimination, defines "program or activity" as " 'all of the operations' of specific entities, including 'a department, agency, special purpose district, or other instrumentality of a State or of a local government.' " *Id.* at 44. (quoting 29 U.S.C. § 794(b)(1)(A) (1994)). The court also recognized, as did the district court, that the plain meaning of "activity" is a " 'a natural or normal function or operation.' " *Id.* (quoting Webster's Third New International Dictionary (1993)). The court concluded that "both the ADA and the Rehabilitation Act clearly encompass zoning decisions by the City because making such decisions is a normal function of a governmental entity." *Id.* at 44. Additionally, the court found that the legislative history of the ADA shows that Congress intended its prohibitions to apply to all governmental activities of public entities. *Id.*

Similarly, this Court finds that the ADA encompasses the fire regulation scheme at issue in this civil action because that scheme is a "normal function of a governmental entity." Additionally, although this Court agrees with the Second Circuit's analysis of the ADA's legislative history, this Court finds that resort to that history is neither necessary nor appropriate because the statutory language is unambiguous. *See Matala v. Consolidation Coal Co.*, 647 F.2d 427, 430 (4th Cir.1981) (explaining "[w]e look to the legislative history in construing a statute only if the meaning of a statute is unclear."

**2.** *See Kessler Inst. for Rehabilitation, Inc. v. Mayor and Council of Essex Fells*, 876 F.Supp. 641, 655 (D.N.J.1995); *Robinson v. Friendswood*, 890 F.Supp. 616, 620 (S.D.Tex.1995); *Oxford House, Inc. v. Albany*, 155 F.R.D. 409, 410–11 (N.D.N.Y. 1994).

*United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961)). Like the Second Circuit, this Court finds that the language of Title II's discrimination provision "prohibits all discrimination by a public entity, regardless of context...." *Id.* at 44–45, 81 S.Ct. 1278. Finally, this Court finds that the rationale of the *Innovative* decision comports with the plain language of the regulations promulgated under the ADA which clearly state that a public entity may not administer a licensing program in a discriminatory manner. 28 C.F.R. § 35.130(b)(6). Accordingly, defendants' motion to dismiss plaintiffs' claim under the ADA should be denied.

This Court declines to rule on defendants' argument that a waiver does not constitute a reasonable modification to the fire regulation scheme for the same reasons that this Court declined to rule on the issue with respect to plaintiffs' FHAA claims. Such arguments test the merits of the complaint as opposed to its sufficiency and are properly considered on a motion pursuant to Rule 56.

### C. *Capacity and Ripeness Defects*

■ Defendants assert that neither the next friends nor the Association possess the capacity to sue on behalf of the named residents, Daisy Layman and Dorsey Pierce. Defendants argue that before the next friends may bring suit on behalf of the residents, the residents must be adjudicated incompetent by a West Virginia state court. Defendants assert that the lack of a guardian for either resident shows that neither one has been adjudicated incompetent because West Virginia Code § 44A–2–1 would require such an appointment. Defendants base this argument upon Fed.R.Civ.P. 17(b) & (c).

In response, plaintiffs argue that "there is no dispute" that Ms. Pierce is incompetent as a result of her dementia; thus, it is "prudent" for her to sue through a next friend. (Resp.Br. at 22). Plaintiffs also explain that Ms. Layman sues through a next friend because of her inability to attend court pro-ceedings, but that she would be willing to proceed in her own name. Further, plaintiffs argue that this Court possesses the power, without regard to state law, to appoint guardians for these individuals pursuant to Fed.R.Civ.P. 17(c) because it is a procedural rule and not a substantive rule.

This Court agrees with defendants. "The district court's power to appoint under Rule 17(c) should not be used to circumvent the mandate in Rule 17(b) to observe state law." *Wolfe by Hedges v. Bias,* 601 F.Supp. 426, 427–28 (S.D.W.Va.1984) (citing 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1571 (1971)). West Virginia law provides for the appointment of guardians and/or conservators for the incompetent. W.Va.Code § 44A–1–1, et seq. (1994). As the court in *Wolfe, supra,* noted, that process includes an evidentiary hearing, the appointment of counsel for the alleged incompetent, and now it requires an evaluation report by a licensed physician or psychologist.[3] Like the *Wolfe* court, this Court will not circumvent that process. At the same time, this Court finds it inappropriate to dismiss this action on this ground because the impropriety of suing by next of friend does not affect the elements of the claims alleged in the complaint. Accordingly, this Court finds that defendants' motion to dismiss for lack of capacity should be denied. Additionally, this Court finds it appropriate to direct plaintiffs to substitute the real parties in interest in lieu of the inappropriately named next friends.

### D. *Lack of Standing*

■ Defendants also assert that the next friends and the association lack standing to seek relief that would adversely impact other residents in Buckhannon facilities. Defendants argue that the waivers sought by plaintiffs operate to nullify the fire safety scheme; thus, as plaintiffs seek relief for all Buckhannon facilities in the form of waivers, they are pursuing a judgment that endangers those residents who are not before the Court and

---

3. At the time of the *Wolfe* decision, the appointment of guardians for the incompetent was governed by West Virginia Code § 27–11–1, *et seq.* which the court notes required "at least a sup-portive affidavit by a duly licensed physician" in addition to the evidentiary hearing and appointment of counsel. 601 F.Supp. at 428.

who are protected by the fire regulations. Defendants cite no law in support of this position. Plaintiffs did not address this argument in their response.

■ This Court has already addressed the next friends' capacity to sue. With respect to the Association, this Court finds that defendants' argument lacks merit. In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court set forth the requirements of associational standing. An association may seek prospective judicial relief on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claims asserted, nor the relief requested, requires the participation of the individual members in the lawsuit.

■ Here, the residents would have standing to sue in their own right. To show standing under Article III, the residents must establish: (1) they suffered actual or threatened injury, (2) the conditioned complained of caused the injury or threatened injury and (3) the requested relief redressed the alleged injury. *See e.g. Finlator v. Powers*, 902 F.2d 1158 (4th Cir.1990). The residents' non-ambulatory status prevents them from remaining at a RBCH; the current fire regulations are the cause of this injury; and the requested relief, a waiver, would redress this injury because it would allow them to remain at their RBCH. Thus, the first requirement for associational standing has been met. The purpose of a RBCH is to house people who can no longer care for themselves; hence, the Association seeks protection of its interest in extending care to such people regardless of their ambulatory status and in doing so satisfies the second criteria for associational standing. Finally, the participation of the individual residents is not required because neither the ADA nor the FHAA claims require individualized proof. For the foregoing reasons, this Court finds that the Association has standing to sue the defendants. Accordingly, defendants' motion to dismiss for lack of standing should be denied.

**E.** *Exhaustion of Administrative Remedies*

At the time defendants filed this motion, the matter was pending before an administrative law judge with a hearing scheduled for November 15, 1996. Defendants argued, based on this fact, that plaintiffs had not exhausted their administrative remedies and that this action should be dismissed for that reason. In response, plaintiffs asserted that the FHAA permits instituting a civil action in the district court without exhaustion of administrative remedies.

On February 11, 1998, this Court asked counsel in this action to advise it of the status of that proceeding. Counsel informed this Court that the administrative law judge has rendered an opinion, that plaintiffs have appealed the decision to the appropriate circuit court in West Virginia and that the action has been stayed, by mutual agreement, pending this Court's resolution of plaintiffs' claims. Accordingly, this Court finds that defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

**IV.** *Motion For Summary Judgment in Part and to Dismiss in Part by West Virginia State Board of Examiners for Registered Nurses and Rhodes* —Denied as Moot

On November 20, 1996, the Board and Rhodes filed a motion for summary judgment in part and a motion to dismiss in part. On December 12, 1997, the parties stipulated to the dismissal of both the West Virginia State Board of Examiners for Registered Nurses and Laura S. Rhodes, Executive Director. Accordingly, the above-mentioned motions should be denied as moot.

**V.** *Renewed Motion for Summary Judgment in Part and Motion to Dismiss in Part by West Virginia Office of State Fire Marshal and Smittle* —Denied

■ On January 13, 1997, the Fire Marshal and Smittle filed a "renewed" motion for summary judgment and a motion to dismiss. After reviewing that document, this Court finds that the motions should be denied for the following reasons. First, the motion for summary judgment appears, as far as this Court can discern, to be made by incorpo-

ration of the Board and Rhodes' motion for summary judgment. With respect to the Fire Marshal and Smittle, this Court cannot determine by the motion the extent to which the Board's motion applies to these defendants, and these defendants have not argued with any particularity. Moreover, these defendants have not complied with the local rule governing summary judgment motions, LR 7.02, which requires a supporting memorandum and other documents upon which the Rule 56 motion relies. For these reasons, the motion for summary judgment should be denied.

■■■ These defendants move to dismiss the amended complaint with respect to themselves on the ground that plaintiffs have "failed to allege any adverse action taken by Defendant Fire Marshal." (Renewed Mot. at 2). Additionally, these defendants state that plaintiffs have not sought any modification of the fire code nor have plaintiffs exhausted their administrative remedies. This Court has addressed exhaustion of remedies. As to these defendants' other assertions, this Court finds that plaintiffs' complaint, to the extent that it seeks injunctive relief from enforcement of the fire code, asserts claims against the Fire Marshal and Smittle that are sufficient to survive a Rule 12(b)(6) motion. Accordingly, defendants Fire Marshal and Smittle's renewed motion to dismiss should be denied.

These defendants also move to dismiss (or for summary judgment) plaintiffs' claims made pursuant to Title III of the ADA. They make this motion by incorporating a memorandum defendants state was entitled "A Memorandum of Law in Support of Defendant's [sic] West Virginia State Board of Examiners for Registered Professional Nurses, Laura S. Rhodes, Executive Secretary, Renewed Motion for Summary Judgment in part and Motion to Dismiss in Part in Response to Plaintiffs' Amended Complaint." Such a document was never filed with this Court. Because these arguments are not before this Court, defendants' motion to dismiss plaintiffs' Title III ADA claims should be denied.

## VI. *Conclusion*

First, because this Court finds that plaintiffs have stated a claim for facial discrimination under the FHAA and for discrimination under the ADA, defendants' motion to dismiss for failure to sufficiently allege these claims is DENIED. Second, because this Court finds that plaintiffs cannot consistently maintain a claim for facial discrimination and discriminatory impact, defendants' motion to dismiss the discriminatory impact claim is GRANTED. Third, defendants' motion to dismiss for lack of capacity to sue is DENIED and plaintiffs are **DIRECTED to substitute the real parties in interest in lieu of the inappropriately named next friends within ten (10) days following the entry of this order.** Fourth, because this Court finds that the West Virginia Residential Board and Care Home Association has associational standing, defendants' motion to dismiss for lack of standing is DENIED. Next, because this Court finds no reason to dismiss for failure to exhaust administrative remedies, defendants' motion to dismiss on that ground is DENIED.

Additionally, because the Board and Laura S. Rhodes are no longer defendants in this action, their motion for summary judgment in part and to dismiss in part are DENIED as MOOT. Finally, the motions to dismiss and for summary judgment made by the Fire Marshal and Walter Smittle are DENIED for the reasons set forth above.

IT IS SO ORDERED.